***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted November 21, 2022, affirmed April 19, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MIGUEL ANGEL MARTINEZ MORALES,
aka Bianney Perez Rojas,
*Defendant-Appellant.*

Umatilla County Circuit Court
18CR15984; A175290

Daniel J. Hill, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Lagesen, Chief Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Defendant was convicted of one count of third-degree rape, ORS 163.355 (Count 1), and two counts of second-degree sexual abuse, ORS 163.425 (Counts 3 and 4), after engaging in a sexual relationship with a minor, T, and fathering her child. During trial, defendant requested to substitute appointed counsel and defense counsel moved to withdraw, defense counsel informed the court that defendant had directed her not to speak on his behalf if the court were to deny those requests, and defendant (who is Spanish speaking but also speaks English) requested an alternative interpreter. Also, prior to and during trial, the defense moved to continue trial several times. The trial court denied each request to substitute counsel and to continue trial, explicitly ruled that defense counsel was still representing defendant, and denied defendant's request for a substitute interpreter. The jury found defendant guilty on Counts 1, 3, and 4,[1] and the court imposed a $5,000 compensatory fine payable to T connected to the conduct underlying Count 1 as part of defendant's sentence.

Defendant now appeals, raising seven assignments of error. We reject defendant's fifth assignment of error—that the trial court erred by denying his request for the trial to proceed in his absence—without discussion because it is unpreserved and does not constitute "plain error." *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *."); *see also State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (describing plain error requirements). There is no right to trial *in absentia*. We affirm the judgment of the trial court on the remaining assignments for the reasons explained below.

*First and second assignments of error.* Defendant contends that, because he demonstrated a breakdown in the attorney/client relationship when he stated that he did not understand the proceedings and refused to permit counsel

---

[1] Defendant was also charged with another count of second-degree sexual abuse (Count 2), which was dismissed prior to trial.

to speak for him, the trial court abused its discretion by declining to substitute counsel.[2] We disagree.

A criminal defendant "has no right to have another court-appointed counsel in the absence of a legitimate complaint concerning the one already appointed for him." *State v. Langley*, 314 Or 247, 257, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28 (1993) (*Langley I*) (quoting *State v. Davidson*, 252 Or 617, 620, 451 P2d 481 (1969)). The court found here, and we agree, that defendant never articulated a legitimate complaint concerning the performance of his appointed counsel that would require substitution. Defendant's complaints were primarily focused on not wanting the trial to proceed and did not identify any concrete concerns about counsel's representation of him. *See State v. Olson*, 298 Or App 469, 472-73, 447 P3d 57 (2019) (no error in denial of motion to substitute where defendant did not show "concrete concerns about the present performance of counsel"). His assertion that he would not let counsel speak for him, made only while reiterating that he did not want to go to trial and asking for more time, is not a basis to substitute counsel in the absence of any legitimate complaints about the performance of counsel. *See State v. Langley*, 351 Or 652, 668-69, 273 P3d 901 (2012) (*Langley II*) (distinguishing between a defendant's mere failure to cooperate with counsel against his best interest and a legitimate complaint about the performance of counsel). Further, the court expressly found that counsel was adequately representing him despite counsel acknowledging a breakdown in the attorney/client relationship. *See State v. Davis*, 345 Or 551, 582, 201 P3d 185 (2008), *cert den*, 558 US 873 (2009) (no error in denial of motion to substitute where court found counsel "fully adequate in their representation of defendant, despite the strain that defendant's hostility toward them created"). And, based on the totality of its observations, the trial court explicitly found defendant's complaints about not understanding the proceedings not credible.[3]

---

[2] Defendant requested to substitute counsel and defense counsel moved to withdraw at several points prior to trial. He does not challenge those rulings on appeal but only challenges the court's later rulings made on the second day of trial.

[3] Prior to trial, the defense requested an aid and assist evaluation. Defendant asserts that the evaluation report showed that he was "credibly struggling to

Under those circumstances, it was well within the trial court's discretion to deny the motions to substitute counsel. *See State v. Daley*, 318 Or App 211, 212, 506 P3d 502, *rev den*, 370 Or 212 (2022) (reviewing trial court's decision whether to grant substitution of counsel for abuse of discretion).

*Third assignment of error.* Defendant next challenges the court's denial of his motion for a continuance. A trial court may postpone trial for a reasonable period of time "upon sufficient cause" shown by the defendant. ORS 136.070. "We review such rulings for abuse of discretion, which compels affirmance so long as the trial court's determination is within the range of legally correct choices and produces a permissible, legally correct outcome." *State v. Kindler*, 277 Or App 242, 250, 370 P3d 909 (2016) (internal quotation marks omitted). As described above, defendant made several requests to continue trial before and during trial. On appeal, he does not identify which particular motion he is challenging. In any event, on the record before us, we cannot say that the court abused its discretion by denying any of defendant's requests to postpone trial.

*Fourth assignment of error.* In his next assignment, defendant contends that the trial court erred by "effectively" depriving him of his right to counsel without ensuring that he knowingly and intentionally waived that right, after ruling that it would not substitute appointed counsel. As we understand it, defendant argues that the court's ruling permitted counsel to proceed as "advisory" and therefore required the court to obtain a valid waiver of his right to counsel.

Defendant's argument is premised on *Olson*, 298 Or App 469, and is misplaced. Importantly, our discussion in *Olson*, which suggested that a valid waiver of the right to counsel is necessary if the "effect" of the trial court's ruling on a motion to substitute counsel was to have defense

understand his legal situation and could not better understand it without the assistance of substitute counsel." However, defense counsel submitted the report to the court before the court made its credibility finding, and nothing in the report suggests that defendant's difficulties with decision making and accepting his situation were the result of a breakdown in his relationship with counsel, or that substitute counsel could somehow better help him to understand.

counsel proceed as advisory, was, in fact, *dicta*. *See id.* at 474 (taking no official position on the matter because the issue was not raised on appeal). Furthermore, unlike in *Olson* where it was unclear from the record whether the defendant, defense counsel, or trial court knew what role defense counsel was to play after the court denied the motion to substitute counsel, here, the trial court made it abundantly clear that defendant was not proceeding *pro se* and that defense counsel still represented defendant. In other words, there was no "uncertainty" as to what role defense counsel was to play that could have led defendant to believe that he "represented himself." That is so despite the fact that he directed counsel not to speak for him. *See Langley II*, 351 Or at 668-70 (distinguishing between ending representation of counsel or waiving right to counsel and declining to cooperate with counsel against best interest). Thus, nothing on this record suggests that the trial court permitted counsel to proceed as "advisory" nor that it accepted a waiver of counsel. As such, the court was not obligated to determine if defendant knowingly and intentionally waived his right to counsel.

*Sixth assignment of error.* Turning to his sixth assignment, defendant contends that the court erred in denying his request for an alternative interpreter under ORS 45.275 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, he argues that alerting the court that he could not understand one of the interpreters, and that he would not be able to understand the remainder of the proceedings without a substitute interpreter, was sufficient to establish "good cause" to delay the proceedings under ORS 45.275(4). In defendant's view, the court erred in denying that request and violated his right to an "adequate interpreter" under ORS 45.275 and the Due Process Clause.

Under ORS 45.275(1)(a), the court shall appoint a qualified interpreter whenever necessary. If a party, victim, or witness is "dissatisfied" with the interpreter appointed by the court, that person may request the appointment of a substitute interpreter under ORS 45.275(4). However, "[i]f the substitution of another interpreter will delay the proceeding, the person making the request must show *good cause* for the substitution." *Id.* (emphasis added). Here, the

trial court concluded that, in requesting that the court substitute interpreters, defendant had not established "good cause" to delay the proceedings under ORS 45.275(4). In doing so, the court explicitly and implicitly found that Adams, the interpreter who defendant wanted replaced, was qualified and accurately interpreting the proceedings. Defendant does not address those factual findings or provide us with a factual standard of review. Accordingly, for purposes of deciding this assignment—and we emphasize, in the absence of any argument that a different standard should apply—we assume that our usual standard of review applies to the court's factual findings about defendant's ability to understand the proceedings. Applying that standard, we are bound by the court's factual findings here because the record supports them. *See State v. Moore*, 307 Or App 649, 651, 478 P3d 587 (2020), *rev den*, 367 Or 827 (2021) (in deciding whether trial court erred in finding "good cause," ORS 137.106, to impose restitution beyond the 90-day deadline, appellate court reviews trial court's legal conclusions under ORS 137.106 for legal error and factual findings for "any evidence" in the record); *Pereida-Alba v. Coursey*, 356 Or 654, 670-71, 342 P3d 70 (2015) (explaining that appellate courts "presume that a trial court implicitly resolves factual disputes consistently with its ultimate conclusion," where those facts are necessary to its conclusion and supported by the record (citing *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968))).

The court engaged in a colloquy with Adams about his qualifications, establishing that he was a court-certified interpreter with 28 years of experience and that he was interpreting in compliance with his duties. The court also engaged in a colloquy with Young, defendant's preferred interpreter, establishing that she had been listening to the proceedings and that Adams was accurately interpreting. Further, in response to the court's inquiry, defendant continued to reiterate that he did not want the trial to proceed, despite the court's prior denials of his requests to postpone trial, while at the same time—in the same sentence—claiming that he could not understand the interpreter. Based on the court's factual findings and the record that supports them, we conclude that the trial court did not err

in ruling that defendant did not show "good cause" to delay the proceedings to obtain an alternate interpreter.

As far as defendant's due process argument, we decline to address that legal argument because it was not sufficiently developed for our review. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.").

*Seventh assignment of error.* Lastly, defendant contends that the trial court erred by imposing a $5,000 compensatory fine for T because the state failed to prove that she suffered "objectively verifiable monetary losses" under ORS 137.101. We disagree and conclude that there was sufficient evidence to support the trial court's imposition of the compensatory fine. *See State v. Grismore*, 283 Or App 71, 73, 388 P3d 1144 (2016) ("We review a trial court's imposition of a compensatory fine for legal error."); *State v. Aguirre-Rodriguez*, 367 Or 614, 620, 482 P3d 62 (2021) (in a challenge to the sufficiency of the evidence within the meaning of ORS 31.705(2)(a), we examine the evidence in the light most favorable to the prevailing party to determine "whether a rational factfinder, accepting all reasonable inferences, could have found the facts necessary to support the award").

To impose a compensatory fine payable to a victim under ORS 137.101, the state must prove that the victim suffered "economic damages as a result of the offense," which means "objectively verifiable monetary losses" that include "reasonable charges necessarily incurred" for various reasons listed by the statute. *State v. Moreno-Hernandez*, 365 Or 175, 181-83, 442 P3d 1092 (2019); ORS 137.103(4)(a); ORS 137.103(2)(a); ORS 31.705(2)(a). The state need not establish a "specific amount" of economic damages suffered by the victim. *State v. Kellison*, 289 Or App 55, 56-57, 407 P3d 978 (2017), *rev den*, 362 Or 665 (2018). And a victim "incurs" economic damages when she becomes "liable or subject" to the expenses resulting from the crime, regardless of whether some other party ends up paying for the costs. *White v.*

*Jubitz Corp.*, 219 Or App 62, 70, 182 P3d 215 (2008), *aff'd*, 347 Or 212, 219 P3d 566 (2009).

In the present case, the record showed that defendant committed third-degree rape against T, which resulted in T having, and raising, defendant's child, and that defendant had not been a part of the child's life. Based on that record, the court could reasonably infer that there were incurred costs resulting from caring for defendant's child. *Cf. Kellison*, 289 Or App at 56-57 (letter referring to the victim as "being in therapy" was sufficient to show that the victim had incurred economic damages in order to impose a compensatory fine). Additionally, even though the state did not present evidence that T actually paid for the costs of raising her child, she was *subjected* to the costs as the child's mother. *See Moreno-Hernandez*, 365 Or at 188 (recognizing that Oregon law places a legal duty on parents to provide care for their minor children); *see also* ORS 109.010 ("Parents are bound to maintain their children * * *.").[4] Thus, based on the record before us, a reasonable factfinder could have found that T incurred objectively verifiable monetary losses as a result of defendant's conduct.

Affirmed.

---

[4] Defendant's argument that the state failed to prove that T personally "incurred" any economic damages related to raising the child is based on T being a minor when the child was born. *See Moreno-Hernandez*, 365 Or at 188-89 (recognizing that medical expenses incurred due to the negligent injury of an unemancipated minor child are damages suffered *by the parent* and not the child). But defendant fails to address how his argument applies to the time that T, who was 20 years old at the time of trial, was no longer a minor and was still raising defendant's child.